The first case is Citizens United To Protect Our Neighborhoods v. Village of Chestnut Ridge So, just give us one second to get ready and Mr. Liu, am I pronouncing that right? Yes, you are. And Mr. Liu, you've requested two minutes for rebuttal, so that gives you eight minutes out of the gate. You may proceed. Thank you. Good morning, and may it please the Court. I'm Michael DeLue on behalf of the appellants. I know that starting off the day talking about municipal taxpayer standing isn't necessarily everybody's cup of tea. Well, but we're not just everybody. We're not just everybody. I like that stuff. It's also seemingly very appropriate today because it's the 100th anniversary to the very day that Frothingham was argued at the United States Supreme Court. The case that gave birth to municipal taxpayer standing. I'll buy him a cake. The individual appellants here are long-term residents of Chestnut Ridge, which is a village in Ramapo Township in Rockland County, New York. This case challenges a 2019 zoning law that was written by a religious organization for the benefit of the members of the religious organization and that clearly benefits religious use over non-religious use. But let's get to the standing, because that really is the ballgame, I think. Sure. So the standing issue here is at the pleading stage whether or not the court erred in dismissing the appellants on standing. The appellants adequately alleged all three forms of standing.  We think taxpayer and direct exposure are both very good arguments. All right. So let's start with then tax. Sure. So the municipal taxpayer standing, the plaintiffs alleged specific expenditures that were made to a private land use firm for the purpose- But this is prior to the enactment of the zoning regulation, right? That's correct. These were expenditures that were used in order to enact the law. But usually the focus is on whether the implementation of the law is going to result in either a loss of revenue or is going to somehow affect the taxpayers' out-of-pocket expenses, right? We think that that's often the case, but I don't think it's always the case. But it would seem to me that if this is enough for taxpayer standing, then anybody who has really no standing, they've got no argument that there's any financial consequences of a particular regulation, can go to the zoning board meeting and say, I think you've got an establishment clause problem, and if the town says, all right, well, we better get a lawyer to take a look at this, all of a sudden you've generated standing because they spent money on a lawyer to assess whether there was an establishment clause problem. Can that be right? Well, I don't think that that's the facts that we have here. This is an instance where the expense, which was hiring an outside firm to work with a religious organization to pass a religious law, directly relates to the implementation and enactment of the law. But there are expenses involved in the enactment of laws all the time. You might take a poll. You might hire an outside accounting firm or a law firm. And your view is that's enough for taxpayer standing? I mean, obviously, every establishment clause case is unique on its own facts. It might be, but I think, again, you would have to look at the facts of any particular establishment clause claim and the allegations to see if the expenditure was connected, how closely it was connected to the law. Well, what do you want done about it? How is it redressable? The money's already been spent. You can get the money back from the consultant. No, the redressability is to declare the law to be unconstitutional. Just the declaration. The declaration that the law is unconstitutional. And that's what the plaintiffs here have sought. They've sought a declaration that it's unconstitutional. In addition to the- When did the constitutional violation take place? It seems to me it doesn't take place until the law is enacted, until the zoning right is enacted, right? We think that it takes place at the time that the zoning law was enacted. That's when the law takes place. So it's the loss of revenue or the appropriations that are attributable to the unconstitutional act. You're doing the appropriations prior to the act that are instrumental in bringing about the act. We believe that that should be sufficient. Otherwise, you could end up with acts all the time that would be very difficult to challenge if you weren't able to establish tax payers. Well, I mean, let's get to your direct exposure. Well, before we get there, the other things that are alleged in the complaint are that as a result of the law, individuals or organizations that want to take advantage of the law and want to apply for houses of worship under the law are allowed to bypass the process of getting a conditional use permit. I make that sort of generic statement, but it doesn't seem like there's any specifics that are alleged in the complaint. If anything, it seems to me that the complaint says that the mayor confirmed that there are no applications for variances that are being made. Right, so if there's no applications for conditional use permits, the fees associated with applying for a conditional use permit are no longer received by the village. So that's a significant loss of revenue. In addition, the mayor, and it's in our complaint, the mayor in paragraph 84, the mayor directly stated that these houses, if they're used as houses of worship, can get tax abatements or exemptions for their portion of the property used for the religious property. We think that those three things taken together are enough to establish municipal taxpayer standing. On the on the direct exposure side of things, we believe that the imminent harm of of the village being turned into a religious village by the numbers of untold numbers, of unlimited numbers of religious houses growing up in otherwise single family neighborhoods, is enough of an imminent harm that the direct exposure prong should be should be easily met for standing. Wait, wait, so you're saying that because this law will make it easier for religious buildings to go up, that's enough for direct harm? No, no, the direct harm comes from the fact that it's not just easier, but that it's likely to be the fact that there will be religious buildings built throughout the village, all throughout the village. That's also a criticism, not just that the plaintiffs raised in their complaint, but the village's own planning board raised this concern prior to the enactment of the law. And in saying that this is far too an intense use for residential properties. I thought your problem was, your organization's problem was that individual houses, residential, ordinary residences would be used for religious observance. Well, that's one of the problems. The other problem is this intermediate category called neighborhood houses of worship, which can be extremely large structures on regular single family housing plots of land that will dwarf the houses in the neighborhood. Right, but to establish this direct harm, it's not that just like, oh, well, on some generic sense, the town will change. It's that I, as a property owner, am going to be affected by it. I'm right next door to one of these megaliths, and that's not been alleged, right? Well, I don't know that you need that close of a connection. For example, in the Southside Fair Housing Association case, it was enough that people in the neighborhood were going to be subject to a religious enclave that was being created by the sale of a piece of land to a Hasidic organization. That was considered to be enough for direct exposure standing in the Southside Fair Housing case. Similarly, in the Sullivan, no relation, versus Syracuse Housing Authority, again, the key was that it was in the backyard of the people that were alleging this. This was not people roaming the country looking for— That was in the backyard. The only allegation here is for Kogut, who has a house nearby, but that's not this statute. That's a prior variance that was granted, right? Well, that was granted under a prior variance. Well, whether it was granted or not is a different issue. So it has nothing to do, then, with the direct harm here. Well, I think that given the fact that it is likely that there will be many such houses throughout the entire village, and the individuals and the organization are all in the village and all have a significant interest in land use in the village, it's enough to get them standing under direct exposure. I've reserved two minutes, but if you have further questions now, I can answer them. Well, we'll hear you again in two minutes. And now we'll hear from Mr. Lizotte. Am I saying that right? Lizotte. Lizotte? Or Lizotte? Yes. All right, Mr. Lizotte. Good morning. May it please the Court. Matthew Lizotte of Fair Commuter McCartney for the Village of Chestnut Ridge. Your Honor, if you would bear with me and let me get a little more monotonous than taxpayer standing, I'd just like to make one correction. What the law did is place the residential gathering places and neighborhood places of worship on the same plane as other uses that require conditional use permits. I know I respectfully disagree with the appellant regarding whether conditional use permits are required. They are required for both the neighborhood house of worship and the residential gathering place. The community house of worship requires a special permit, which must go before the town board, and the town board has more discretion to deny. But this law places the residential gathering place and the neighborhood house of worship on the same plane as uses like agricultural, breeding and raising horses, keeping and herding cows, nursery schools, home offices, libraries, museums, and art galleries. It's a conditional use. What kind of use would be a home gathering? So for the residential gathering place... Is it concerts or speakers? The residential gathering place both allows religious and non-religious uses. And I just want to go back for one second to finish the point. Record 97 has the bulk table that shows which uses are the conditional uses, which uses are the special permit uses. All of these require conditional use, and the community house of worship must go before the town board for a special permit. Now, any loss of revenue, that would be fictional because it's actually the same fee. It's public record. The town posts its fees for a conditional use permit and a special use permit. Is that in the record? It's not in the record, Your Honor. But the fee is that they're asking for an inference that there's a loss of revenue based upon the fact that there's no special permit requirement for these two uses, the neighborhood gathering and the residential gathering, the neighborhood house of worship and the residential gathering place. But they still require a conditional use permit. So it's not exactly true. They just don't require a special permit. But is that in the record either? That is in the record, Your Honor. And that's 97. That's 97. Yes, and that has the bulk table which shows. And it just puts it on the same level as these other conditional uses. And the special permit uses are cemeteries, nursing homes, stables, volunteer ambulances, schools. Those are the special use permits which are now on the same plane as the community house of worship, which is the larger of all three. And to go back to your question, Your Honor, I'm sorry. For the residential gathering places, those allow just any kind of assembly. So it could be a speaker. It could be any nonreligious use for assembly. A political group. Absolutely. There's no religious requirement for that use. And that's the residential gathering place, and that's one of the three. And to just explain quickly the difference between the special use permit and the conditional use permit, this goes before the planning board. The planning board then puts conditions on the use based on the statute, and that's actually in record. I think it's important. 77 to 104, which is the changes to the specific statute. And it explains what happens. It gives the planning board a lot of discretion to put requirements on these, all three. And then, like I said, the community place of worship, that must then go to get a special permit, which the town has more discretion to deny. And I think it's important to note that the reasons the town passed the law, they're peppered throughout the enacting resolution, adopting resolution. And I think it's important to see that they're faced with, and it's throughout the complaint, it's stated. So I would assume appellants would admit it, that the town is facing many threats of federal lawsuit, and the first reason listed in the adopting resolution is that the town wants to comply with federal law. And to do so, they attempted to reduce a burden. And that's one of the four reasons as well, reducing a burden on religion. And, of course, I'm sure the court is very familiar with Re Lupa. It's another level of zoning that the town must consider, and it's clear from the record that they did consider it. The mayor explained many times to the people objecting at the public hearings, and there were three public hearings here. And the mayor explained it multiple times, that this is how a bill becomes a law. An interest group might approach, and they draft a law, and the village considers it. And now the village heard from opposition at three public hearings that occurred. And coupon was there. That's obvious from the record. They made their objections. They were heard. And the village decided to pass the law. All right, so standing is where we spent the first eight minutes. You're giving us an interesting sort of overview, but are you making standing arguments? I'll move on to standing because I think this is important to get there, Your Honor. So as far as the municipal taxpayer standing, as the court was keening in on or honing in on, the expenditure happened before the law was passed. It was with an outside planner. They met with the group that was introducing the law. That meeting happens whether or not the law is passed. The village board can then choose, after hearing opposition, whether or not they want to pass the law. It's possible that they hear the opposition. They change their mind. They don't want to pass the law. So now they're asking for establishment clause standing based upon the existence of an invoice that exists, whether the law passes or not. And another issue is- So are you suggesting that for taxpayer standing, municipal taxpayer standing, there should be a cutoff? In other words, pre and post passage of what involves legislation like this? Well, I think it usually has to do with enforcement of the law, Your Honor. So the court brought up redressability. I think that's an important issue. What expenditure is going to be stopped here by enjoining the law? The planning board meeting, the village planner meeting with the outside group already happened. There's no really enjoining that by- There's no stopping that expenditure by enjoining the law. And in the future, I would think that villages shouldn't have to worry about meeting with someone who proposed the law, that there might be a municipal taxpayer standing case waiting in the wings as soon as this law is passed. As far as traceability, I think that's a big issue. I don't see any link to any injury from this village planning board planner meeting with the group that is interested in passing the law. It's not linked in the complaint to an establishment clause injury. And then if the court doesn't have any questions on that issue, I'll move on to direct exposure. As far as direct exposure goes, the appellants go to great lengths to say that this injury is in their backyard. But as the court pointed out in the opening argument, the issue is all the houses of worship that existed at the time this complaint was filed, they were all built prior under the old zoning law. So there's no harm. The future harm is hypothetical. There's not a single house of worship alleged passed under this law in the complaint. And as far as comparing it to Southside, I think Southside facts are very distinguishable. The Southside plaintiffs, Southside is a case where New York City condemned land. They knocked down housing. The housing included African-Americans, Latinos, and the Hasidic Jewish community. They then sold the land, knowing that it would be an exclusive Hasidic use. And then the plaintiffs complained in that case that they were going to be excluded from this community and moved out of this community. That gave them standing. There you had all of the factors of standing. You had injury, concrete injury. You had traceability. And you had redressability. And if there's no more questions, the village will rest on its brief. All right. Thank you, Mr. Lozada. Thank you. It's a matter for Mr. Liu. Dillard or Liu? It's Dillard, yes. Mr. Dillard, for two minutes of your time. So, I think the major concern that we have here is that, as this court and the Supreme Court have held numerous times, standing in establishment cases is elusive. You have these concepts that have grown up. Taxpayer standing, direct exposure standing, and denial of the benefit standing, which we also think we have here. What benefit was denied? So, the benefit is the fact that a religious organization can apply for these neighborhood houses of worship that nobody else can apply for. Well, wait. How is that alleged in the complaint? I mean, is there anything alleged in the complaint to suggest that the plaintiffs, any of these plaintiffs, wanted to build a basketball court or a cycling arena that would match the dimensions of these houses of worship and were denied? No, there's no allegations. There's no specific allegations that anybody was willing to do that. So, how are they denied? Because it's a benefit that is available only to religious organizations. Denial of a benefit means that you have to have tried to exercise that benefit or the right to a benefit and been denied, right? Well, I don't know that that's necessarily true. Some of the cases, including the cases that had different pricing for magazines or publications, I don't know whether in those cases – But is there anything in this complaint to suggest that any of the plaintiffs here wish to build a structure comparable to what the religious houses of worship would be? No, no. There's nothing in the complaint that alleges that. So, how are they harmed by this then? They're harmed because it is a benefit that theoretically only religious people can – or religious organizations can take advantage of in that neighborhood house of worship category. That's the allegation. That's based on the plain language of the statute, that it's not available. Again, I want to point out this is the pleading stage. Obviously, I think that on taxpayer and direct exposure, we should have enough under the Second Circuit President to get at least to the merits of the case. Which, again, this being a core Establishment Clause case, I think is worth doing. I think that the allegations of standing are sufficient. Thank you very much. All right. Thank you both. We will reserve the stage.